UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROZENA A. WILLIAMS,                          )
                                             )    CASE NO. C11-5407-MAT
          Plaintiff,                         )
                                             )
     v.                                      )    ORDER RE: SOCIAL SECURITY
                                             )    DISABILITY APPEAL
MICHAEL J. ASTRUE, Commissioner              )
of Social Security,                          )
                                             )
          Defendant.                         )
_____     )

Plaintiff Rozena A. Williams proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the ALJ's decision is REMANDED for further administrative proceedings.

/ / /

/ / /

/ / /

ORDER
PAGE -1

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1978.[1]  She has a GED and previously worked as a recreation aide, social service aid, and sales clerk. (AR 19, 35.)    Plaintiff filed an application for DIB on July 30, 2007, alleging disability beginning September 15, 2004.   She is insured for DIB through December 31, 2008.  (AR 10.)  Plaintiff's application was denied at the initial level and on reconsideration, and she timely requested a hearing.

On February 2, 2010, ALJ M.J. Adams held a hearing, taking testimony from plaintiff and a vocational expert.  (AR 901-80.)  On February 26, 2010, the ALJ issued a decision finding plaintiff not disabled.   (AR 10-21.)

Plaintiff timely appealed.   The Appeals Council denied plaintiff's request for review on April 13, 2011 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date.   At step two, it must be determined whether a claimant suffers from a severe impairment.   The ALJ found plaintiff's

---

1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ORDER
PAGE -2

01  fibromyalgia, affective disorder, anxiety disorder, migraines, obesity, and spinal syrinx severe.

02  Step three asks whether a claimant's impairments meet or equal a listed impairment.   The ALJ

03  found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

04      If a claimant's impairments do not meet or equal a listing, the Commissioner must

05  assess residual functional capacity (RFC) and determine at step four whether the claimant has

06  demonstrated an inability to perform past relevant work.   The ALJ found plaintiff able to lift

07  and/or carry twenty pounds occasionally and ten pounds frequently, able to stand and/or walk

08  six hours in an eight hour workday, to sit six hours in an eight hour workday, and to push/pull

09  without limitation.   Plaintiff should avoid concentrated exposure to vibration, heights, and

10  hazards.   Plaintiff retains the capability to adequately perform the mental activities generally

11  required by competitive, remunerative work; specifically, to understand, remember, and carry

12  out simple two to three step instructions; an average ability to perform sustained work activities

13  (maintaining attention and concentration, persistence, and pace) in an ordinary work setting on

14  a regular and continuing basis (i.e., eight hours a day for five days per week, or an equivalent

15  work schedule) within customary tolerances of employers' rules regarding sick leave and

16  absence; able to make judgments on simple work-related decisions, respond appropriately to

17  supervision and a few co-workers, and deal with changes all within a stable work environment.

18  Incidental contact with the general public is not precluded, but plaintiff cannot deal with the

19  general public as in sales positions or where the general public is frequently encountered as an

20  essential element of the work process. With that assessment, the ALJ found plaintiff unable to

21  perform her past relevant work.

22      If a claimant demonstrates an inability to perform past relevant work, the burden shifts

01 to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

02 an adjustment to work that exists in significant levels in the national economy. With the

03 assistance of the vocational expert, the ALJ found plaintiff capable of performing other jobs,

04 such as work as a small products assembler, document preparer/scanner, and

05 cleaner/housekeeper.

06     This Court's review of the ALJ's decision is limited to whether the decision is in

07 accordance with the law and the findings supported by substantial evidence in the record as a

08 whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means

09 more than a scintilla, but less than a preponderance; it means such relevant evidence as a

10 reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881

11 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which

12 supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278

13 F.3d 947, 954 (9th Cir. 2002).

14     Plaintiff argues that the ALJ erroneously evaluated the medical opinion evidence, failed

15 to properly evaluate the credibility of her testimony, did not provide legally sufficient reasons

16 for rejecting the lay witness evidence, failed to properly formulate her RFC, and erred at step

17 five. She requests remand for an award of benefits or, alternatively, for further administrative

18 proceedings. The Commissioner argues that the ALJ's decision is supported by substantial

19 evidence and should be affirmed.

20                                 Medical Opinion Evidence

21     In general, more weight should be given to the opinion of a treating physician than to a

22 non-treating physician, and more weight to the opinion of an examining physician than to a

01  non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not

02  contradicted by another physician, a treating or examining physician's opinion may be rejected

03  only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

04  1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may

05  not be rejected without "'specific and legitimate reasons' supported by substantial evidence in

06  the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

07  1983)).

08      The ALJ may reject physicians' opinions "by setting out a detailed and thorough

09  summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

10  making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*,

11  881 F.2d at 751). Rather than merely stating his conclusions, the ALJ "must set forth his own

12  interpretations and explain why they, rather that the doctors', are correct." *Id.* (citing *Embrey*

13  *v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

14      Less weight may be assigned to the opinions of other sources. *Gomez v. Chater*, 74

15  F.3d 967, 970 (9th Cir. 1996). However, "[s]ince there is a requirement to consider all relevant

16  evidence in an individual's case record," the ALJ's decision "should reflect the consideration of

17  opinions from medical sources who are not 'acceptable medical sources' and from

18  'non-medical sources' who have seen the claimant in their professional capacity." Social

19  Security Ruling (SSR) 06-03p. "[T]he adjudicator generally should explain the weight given

20  to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence

21  in the determination or decision allows a claimant or subsequent reviewer to follow the

22  adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."

01  *Id.*  "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v.*

02  *Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Benton v. Barnhart*, 331 F.3d

03  1030, 1040 (9th Cir. 2003).   *Accord Thomas*, 278 F.3d at 956-57 ("'When there is conflicting

04  medical evidence, the Secretary must determine credibility and resolve the conflict.'") (quoting

05  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

06  A.    Dr. Y. Ki Shin

07          The ALJ considered the opinion of treating physician Dr. Y. Ki Shin (*see* AR 431) as

08  follows:

09          I also considered the letter written by the [plaintiff]'s pain manager, Y. Ki Shin,
        M.D., dated February 12, 2008, but did not find it persuasive.   In this letter, Dr.
10      Shin opined that the [plaintiff] was "truly disable[d] from any kind of gainful
        employment due to her chronic pain." He specifically noted "diffuse pain from
11      nerve damage" as well as fibromyalgia.   However, this is not consistent with
        the record.   Nerve conduction studies were normal and the [plaintiff]'s syrinx
12      was determined to be benign.   I also note that the bulk of clinical notes from Dr.
        Shin appear to address the [plaintiff]'s various prescriptions and do not contain
13      much detail regarding objective testing.   Further, it appears that her
        fibromyalgia was under reasonable control with medications and trigger point
14      injections.   Given this, it is difficult to understand the reasoning behind Dr.
        Shin's general statement that the [plaintiff] was disabled.   Moreover, such a
15      conclusion is reserved to the Commissioner.   As such I did not find this opinion
        persuasive.

16

17  (AR 17-18, internal citations omitted.)

18          Plaintiff denies the inconsistency of Dr. Shin's opinions with the record, noting the

19  confirmation of the diagnosis of syringomyelia in the nerve conduction study by neurologist Dr.

20  James McDowell.   (*See* AR 333-36.)   Plaintiff characterizes the ALJ's concern with objective

21  testing as inappropriate given that fibromyalgia is a disease "'that eludes such measurement.'"

22  *Benecke v. Barnhart,* 379 F.3d 587, 594 (9th Cir. 2004) (quoting *Green-Younger v. Barnhart,*

01    335 F.3d 99, 108 (2d Cir. 2003)).   Plaintiff suggests that if the ALJ was uncertain as to the

02    basis of Dr. Shin's opinion, he had a duty to develop the record and contact Dr. Shin for further

03    clarification. 20 C.F.R. § 404.1512(e) ("We will seek additional evidence or clarification from

04    your medical source when the report from your medical source contains a conflict or ambiguity

05    that must be resolved, the report does not contain all the necessary information, or does not

06    appear to be based on medically acceptable clinical and laboratory diagnostic techniques.")

07    Plaintiff also disputes the ALJ's conclusion that her fibromyalgia pain is under "reasonable

08    control[,]" noting she was under the care of a rehabilitation specialist and receiving trigger

09    point injections. (AR 18, 417-30, 468-73.)

10            The ALJ reasonably found Dr. Shin's opinion not consistent with the record.   Treating

11    neurologist Dr. McDowell found no objective explanation for plaintiff's "very, very multiple[]"

12    list of symptoms, deeming a neurological examination "basically normal[,]" with the exception

13    of a finding of syringomyelia, for which he believed "minimal intervention [was] best."   (AR

14    334-38.)   In a subsequent examination, while plaintiff presented with a cane and complained

15    of left hand weakness and clumsiness, Dr. McDowell found no weakness, did not witness any

16    clumsiness, and found plaintiff able to perform fine finger movements.   (AR 335.)   He

17    deemed plaintiff "relatively intact" on objective assessment and recommended no treatment for

18    her symptomatic syrinx.   (*Id.*)   Later, examining neurologists Drs. Brian Vaillant and Eric

19    Kraus concluded plaintiff's syrinx was "an incidental finding" and would not explain her

20    specific symptoms, and found no neurologic cause for those symptoms (AR 341-42, 360.)[2]

21    _____

22            2   The ALJ provided citation to Dr. McDowell's report in describing plaintiff's syrinx as
       benign.   (AR 18.)   In so doing, he appeared to cite the report as only one example in the record

01  Also, examining physician Dr. Jeffrey Carlin noted prior magnetic resonance imaging did not

02  "show any significant back pathology[]" (AR 308), while examining physician Dr. Thomas

03  Curtis found "[n]o objective evidence of significant nerve injury[]" (AR 307).

04      The ALJ also reasonably pointed to the minimal detail regarding objective testing.

05  While plaintiff focuses on the difficulty of measuring fibromyalgia pain, Dr. Shin rendered an

06  opinion based on "chronic pain for various causes[,]" including nerve damage, chronic back

07  pain, and fibromyalgia.  (AR 431.)   The ALJ further reasonably pointed to plaintiff's use of

08  medications and trigger point injections as evidence her fibromyalgia was under reasonable

09  control.   The record reveals plaintiff's report of positive results from trigger point injections on

10  numerous occasions (AR 417-19, 470-72, 525), as well as reports of stability in her

11  fibromyalgia from Dr. Shin (AR 381 (June 2006: plaintiff's fibromyalgia "[d]oing well without

12  any problems[]") and AR 351 (July 2007: "fibromyalgia – stable.")).

13      Lastly, the ALJ found Dr. Shin's opinion unpersuasive, not requiring clarification, *cf.*

14  20 C.F.R. § 404.1512(e), and, as observed by the ALJ, Dr. Shin's opinion as to disability is an

15  issue reserved to the Commissioner and, therefore, not entitled to "any special significance". 20

16  C.F.R. § 404.1527(e)(3).   For all of these reasons, the ALJ sufficiently assessed the opinion of

17  Dr. Shin.

18  B.   <u>State Agency Consultants</u>

19      The ALJ found the opinion of state agency consultant Robert Hoskins, M.D., as to

20  ────────────────────────────────────────

21  supporting his conclusion.  (*Id.* ("*See e.g.* Ex. 13F. 1."))    In any event, the Commissioner's citation to
    the opinions of Drs. Valliant and Kraus, as well as to other medical evidence in the record, does not
    constitute an improper post hoc rationalization given that they are offered not "to invent a new ground of

22  decision[,]" but to provide "additional support for the Commissioner's and the ALJ's position."   *Warre*
    *v. Comm'r of the SSA*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006).

01 plaintiff's physical functionality persuasive, while adding precautions of avoiding hazards and

02 heights.  (AR 17 (citing AR 391-98, 451).)  With regard to mental functioning, the ALJ

03 adopted the opinion of state consultant Anita Peterson, Ph.D., while adding a limitation

04 regarding plaintiff's interaction with the public.  (AR 18 (citing AR 399-416, 450).)

05       Plaintiff deems the "conclusory" determination as to the persuasiveness of Dr. Hoskins'

06 opinion insufficient.  However, in noting that an ALJ must do more than merely offer his

07 conclusions, plaintiff points to case law discussing the ALJ's obligations in *rejecting* the

08 opinions of physicians.  *Embrey*, 849 F.2d at 421-22.  Also, the ALJ did not improperly adopt

09 the opinion of a layperson, "Single Decision Maker" Michael Sherrill.  (*See* AR 17 (citing AR

10 391-98).)  As noted by the Commissioner, Dr. Hoskins affirmed the conclusions contained in

11 the report from Sherrill and the ALJ was required to consider Dr. Hoskins' opinion.  20 C.F.R.

12 § 404.1527(f)(2)(i); SSR 96-6p.

13       Additionally, while plaintiff correctly notes that "[t]he opinion of a nonexamining

14 physician cannot by itself constitute substantial evidence that justifies the rejection of the

15 opinion of either an examining physician or a treating physician[,]" *Lester*, 81 F.3d at 831, the

16 ALJ did not rely on Dr. Hoskins' opinion alone to reject the opinion of Dr. Shin.  *See*

17 *Magallanes*, 881 F.2d at 752-53 ("Indeed, the ALJ did not rely on Dr. Sigurdson's testimony

18 alone to reject the opinions of Magallanes's treating physicians as to the onset date of her

19 disability. Furthermore, the reports of consultative physicians called in by the Secretary may

20 serve as substantial evidence.").  Instead, as described above, the ALJ properly provided

21 specific and legitimate reasons for not finding Dr. Shin's opinion persuasive.  *See Andrews v.*

22 *Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where . . . a nontreating source's opinion

01 contradicts that of the treating physician but is not based on independent clinical findings, or

02 rests on clinical findings also considered by the treating physician, the opinion of the treating

03 physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are

04 based on substantial evidence in the record.")  The reasoning included consideration of

05 contrary medical evidence in the record from other treating and examining physicians.  "[T]he

06 report of a nonexamining, nontreating physician need not be discounted when it 'is not

07 contradicted by *all other evidence* in the record.'" *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th

08 Cir.1995) (quoting *Magallanes*, 881 F.2d at 752 (emphasis in original)).  Here, for all of these

09 reasons, plaintiff fails to demonstrate error in the ALJ's decision to find the opinion of Dr.

10 Hoskins persuasive.

11       Plaintiff's arguments in relation to Dr. Peterson also fail.  Contrary to plaintiff's

12 contention, the ALJ accurately attributed the opinion at issue to Dr. Peterson, not Sherrill.

13 (See AR 399, 415.)  The ALJ also cited the opinion of another non-examining state agency

14 consultant, Bruce Eather, Ph.D., who affirmed Dr. Peterson's opinion in April 2008.  (AR

15 450.)  In addition, while Dr. Peterson did assess "moderate" concentration difficulties in the

16 checkbox portion of the form completed, the ALJ appropriately focused on the narrative portion

17 of the form, wherein Dr. Peterson concluded plaintiff's "concentration is adequate for work."

18 (AR 414-15).  *See* Program Operations Manual System (POMS) DI 25020.010 at B.1 (ALJ

19 should use narrative portion of Mental RFC Assessment form, not checkbox portion of form, in

20 assessing RFC).  The ALJ's consideration of Dr. Peterson, therefore, suffices when considered

21 in isolation.  However, the Court takes into consideration below plaintiff's general argument

22 as to the preference of nonexamining psychologists over treating and other providers.

C.    Dr. Eric Lavy

The ALJ found the opinion of consultative psychological evaluator Dr. Eric Lavy (AR 385-89) consistent with the findings by Dr. Peterson.   (AR 18.)   He explained:

> After examination, consultative evaluator, Dr. Lavy, opined that, despite the claimant's mental disorders, she retained the capacity to perform simple and repetitive, as well as detailed and complex, tasks.   He opined that the claimant could accept instructions from supervisors and interact with co-workers and the public, "with the caveat that she does not feel comfortable in her hometown." He further opined that the claimant could perform activities on a consistent basis without special supervision and could maintain regular attendance in the workplace, completing a normal workday/workweek without interruptions from her psychiatric condition.   He concluded that the claimant could deal with the usual stress encountered in a competitive work environment.   These statements are all consistent with the finding above.   While Dr. Lavy included a concluding note that noted that suffering a major depressive or main episode would, however, "directly impact workplace attendance and activities["]; this statement is speculative and does not provide specific information on the kind of limitations he was intonating.   This concluding statement is vague and thus of little substantive value.   As such, it was assigned minimal weight.

(*Id.*, citations to record omitted.)

Plaintiff argues that the final concluding statement of Dr. Lavy is totally consistent with the nature of symptoms experienced by those afflicted with bipolar disorder, and deems the ALJ's dismissal of the statement contrary to law:

> A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case. Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job. That is likely to be the situation of a person who has bipolar disorder that responds erratically to treatment.

*Bauer v. Astrue*, 532 F.3d 606, 608-09 (7th Cir. 2008) (internal citation omitted).   The Commissioner avers that, to the degree Dr. Lavy's speculation about what might happen in the

future contradicts his series of specific declarations about plaintiff's ability to work, the ALJ properly determined it to be of little substantive value. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province.")

Dr. Lavy appeared to find plaintiff capable of work. (*See* AR 388-89.) He even specifically found she could "maintain regular attendance in the workplace, complete a normal workday/workweek *without interruptions from her psychiatric condition*[.]" (AR 389.) However, he thereafter stated: "The claimant will suffer a major depressive episode or manic episode again which will directly impact workplace attendance and activities, however." (*Id.*) As suggested by the Commissioner, Dr. Lavy's opinion appears contradictory. *Bayliss*, 427 F.3d at 1216. The ALJ recognized as such by contrasting the statement with the "specific information on the kind of limitations" Dr. Levy had otherwise found. (AR 18.) Likewise, the ALJ could reasonably describe Dr. Lavy's concluding statement as speculative.

However, while the ALJ was not under an obligation to contact this examining physician for clarification, the final statement in his report raises a question as to his opinion of plaintiff's ability to work on a sustained basis. As discussed further below, Dr. Lavy's final statement, taken in conjunction with other evidence in the record as to plaintiff's mental impairments, warrants further consideration of plaintiff's claim on remand.

D.    Dr. Thomas Clifford

Plaintiff avers that the ALJ failed to address the findings of nonexamining physician Dr. Thomas Clifford. Dr. Clifford, in March 2007, agreed with an assessment that plaintiff would

01 not be able to tolerate the stress of competitive employment, and opined she would be unable to

02 maintain pace and persistence.   (AR 347-48.)

03      As noted by the Commissioner, however, the ALJ did address the report from Dr.

04 Clifford, albeit with a typographical error in citing the exhibit numbers.   (*See* AR 19 (citing

05 "15F-6F", instead of "15F-16F").)   The ALJ observed that Dr. Clifford rendered his opinion in

06 association with state benefits, and noted "that DSHS and Social Security Administration have

07 different Regulatory evaluations to determine disability under each program."   (*Id.*)   The ALJ

08 also stated that "[t]he brief records included in the record addressing the DSHS decision(s) do

09 not explain the reason for the claimant's disability for State benefit purposes."   (*Id.*)   As

10 observed by plaintiff in reply, the documents read and signed by Dr. Clifford can be read to

11 show the reasons for the opinion as a decline in plaintiff's functioning, increased depression,

12 and somatic focus.   (*See* AR 347.)   However, as suggested by the Commissioner, the ALJ's

13 statement can be reasonably read as finding the documents from Dr. Clifford conclusory and

14 insufficiently supported.   *See generally Thomas*, 278 F.3d at 957 ("The ALJ need not accept

15 the opinion of any physician, including a treating physician, if that opinion is brief, conclusory,

16 and inadequately supported by clinical findings."); *Meanel v. Apfel*, 172 F.3d 1111, 1113-14

17 (9th Cir. 1999) (ALJ may properly reject an opinion that is conclusory and inconsistent with the

18 record).   Accordingly, the ALJ provided specific and legitimate reasons for not finding Dr.

19 Clifford's opinion "indicative of disability required by [the ALJ's] analysis."   (AR 19.)

20 However, as discussed below, the Court concludes that the evidence regarding plaintiff's

21 mental impairments requires further consideration on remand.

22 */ / /*

E.      Geoff Schiller, LICSW

The ALJ addressed the opinions of plaintiff's treating counselor Geoff Schiller, LICSW, as follows:

> I did not find the opinion of the claimant's counselor persuasive, as it was not consistent with the criteria for establishing disability as set out by the Social Security Regulations. Specifically, Mr. Schiller opined in March 2007 that "Given the cl[aimant]'s problems and limitations and need to devote the majority of her energy to her children, I don't see her as presently able to meet the demands of a normal workload or week based on both her mental and physical problems which interact and exacerbate each other." While the claimant's need to manage her household and devotion to her two small active boys is commendable, such activities do not establish disability. In fact, her ability to accomplish these tasks contradicts her allegations that she is unable to perform work activities. I also note that the following month, in April 2007, the claimant reported she felt no depressive symptoms at that time. As such, I did not find this opinion persuasive.

(AR 18, internal citations to record omitted.)

Plaintiff asserts that Schiller, in the March 19, 2007 report relied on by the ALJ, provided several reasons why she could not work on a sustained basis, including, in addition to her children, her "low energy, mood swings, anxiety, difficulty sustaining energy and concentration[,]" and reduced self confidence. (AR 560.)[3] Plaintiff also avers that, in relying on a subsequent record in which plaintiff reported no depressive symptoms (*see* AR 506), the ALJ ignored the fluctuating moods characteristic of bipolar disorder. *See Bauer*, 532 F.3d at 509 (described *supra*). Plaintiff points to numerous documents in the record reflecting the

_____

3 In addition to quoting the March 2007 progress note, the ALJ cited an August 2007 note in which Schiller discussed plaintiff's "'struggle'" and "'difficulty'" in keeping up with her boys and taking them places, and the fact that she was "trying to engage with children as much as possible, goes to soccer games for EG." (AR 549.) (*See also*, *e.g.*, AR 547 (September 4, 2007 note from Schiller: "Experiencing increased anxiety, stress, more depressed mood in part due to increased physical issues and more trouble dealing with her kids. Does not seem capable of sustaining energy and other factors to do a normal workday including at home. More social anxiety too."))

waxing and waning of her symptoms. (*See* Dkt. 15 at 18-19 (citing, *inter alia*, AR 578 (September 1, 2005: "more stable" with improvement in symptoms), AR 571 (September 11, 2006: mood "at least moderately depressed"), AR 561 (March 8, 2007: low energy, mood swings, and "mostly depressed moods."), AR 507 (March 12, 2007: "more depressive symptoms."), AR 506 (April 9, 2007: plaintiff "no longer depressed."), AR 551 (June 25, 2007: moderate degree of depression), AR 550 (July 19, 2007: "Significant depressed mood and stress."), AR 547 (September 14, 2007: "increased anxiety, stress, more depressed mood"), AR 542 (November 30, 2007: plaintiff's "levels of depression, anxiety and physical ailments are fairly stable which remains problematic for her to cope with adequately."), AR 542 (January 3, 2008: "Increased depressed mood[.]"); AR 541 (January 25, 2008: depressed mood and symptoms "sufficient to justify an OCD diagnosis."), AR 533 (May 21, 2008: ativan helping, but motivation to leave home limited), AR 516 (August 9, 2008: "Mood more irritable; anxious [and] poor sleep.").) Plaintiff contends the ALJ erred by relying on a single progress note from April 2007 as a basis to reject the findings of her long time therapist.

The ALJ's notation as to improvement in plaintiff's depressive symptoms is not compelling. As plaintiff shows, the record supports the waxing and waning and general persistence of plaintiff's depressive symptoms over the years. *See id.*

Also, while evidence of ability to care for children can be considered as a factor in assessing a claimant's alleged disability, *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (ALJ appropriately considered claimant's ability to care for her children as a factor in assessing her credibility and finding her less limited than alleged), and inconsistency between a claimant's activities and opinions of medical and other sources is of legitimate concern in

01 assessing those opinions, *Bayliss*, 427 F.3d at 1218 (lay witnesses); *Morgan v. Comm'r of Soc.*

02 *Sec. Admin.*, 169 F.3d 601, 601-02 (9th Cir. 1989) (physicians' opinions), plaintiff correctly

03 observes that Schiller, in the March 2007 progress report at issue, pointed to a number of issues

04 preventing plaintiff's ability to work, only one of which included her children:

> Cl con't to struggle with low energy, mood swings, more anxious, less confident in herself and inability to sustain concentration and energy. Given Cl's problems and limitations and need to devote majority of her energy to her children, I don't see her as presently able to meet the demands of a normal workload or week based on both her mental and physical problems which interact and exacerbate each other.

09 (AR 560.)   The ALJ's failure to acknowledge the full content of the report from Schiller calls

10 into question the otherwise germane consideration of Schiller's acknowledgment of plaintiff's

11 "need to devote the majority of her energy to her children[,]" and an inconsistency between

12 Schiller's opinion and plaintiff's activities in caring for her children.   The Court also, as

13 discussed below, concludes that the ALJ's consideration of the evidence related to plaintiff's

14 mental impairments, taken as as a whole, requires further consideration on remand.   That

15 reconsideration should include the medical records from Schiller.

16 F.      Janey Burris-Fish, A.R.N.P.

17          The ALJ also did not find the opinion of Janey Burris-Fish, A.R.N.P., persuasive.   (AR

18 15, 18.)   He first discussed Burris-Fish at step three.   (AR 15.)   The ALJ pointed to evidence

19 supporting his findings as to plaintiff's limitations, including: that plaintiff cared for herself and

20 her children while her husband worked long hours; that her "older child suffered from attention

21 deficit-hyperactivity disorder and oppositional defiance disorder, complicating his care"; that

22 there was no evidence she was unable to perform tasks of self care; that she undertook a variety

01 of activities, including household chores, throwing a birthday party for her son, gardening,

02 flying to Florida for a two week vacation, attending church, staying with her mother and

03 visiting with friends in Centralia, and spending hours online communicating with others; and

04 that mental status testing indicated she could follow a three-step command. (*Id.*) Given those

05 activities, the ALJ did not find the opinion of Burris-Fish "supported by the longitudinal

06 record." (AR 15 (citing AR 599).) The ALJ also stated:

> Ms. Burris-Fish did not examine the claimant, thus, had only the claimant's subjective reports regarding her limitations from which to base this opinion. Such reports suffer from significant credibility issues, as discussed fully below. Furthermore, such an opinion is out of the scope of Ms. Burris-Fish's treatment of the claimant. This ARNP does not have the benefit of the entire record and is not qualified to evaluate disability from an objective or analytical position. As such, I did not find this opinion persuasive.

11 (*Id.*) The ALJ subsequently addressed the opinions of Burris-Fish as follows:

> Ms. Burris-Fish completed a mental impairment questionnaire supplied to her by the claimant's representative, checking the box indicating that the claimant would have difficulty working at a regular job on a sustained basis. [She] also indicated that the claimant suffered moderate limitations regarding the claimant's abilities to: understand, remember, and carry out detailed instructions; make judgments on simple work-related decisions; interact appropriately with supervisors or co-workers; and respond appropriately to changes in a routine work setting. Note that I have limited the claimant to the performance of two to three step tasks. Further, the evidence does not support further limitations regarding the claimant's abilities to make judgments, interact with supervisors and co-workers, or respond to changes in a routine work setting. As noted above, the claimant cared for her two small children while her husband worked long hours, indicating that she was able to both make simple judgments and respond to the inevitable and constant changes brought on by raising two small children, one of which suffers from mental health issues as well. Moreover, the claimant appeared to interact appropriately with numerous medical clinicians and made decisions regarding her health care regularly. As such, I do not find the bulk of this opinion supported in the record.

22 (AR 19, internal citations to record omitted.)

01    Plaintiff avers that the ALJ misread the evidence in stating Burris Fish never examined

02    her, pointing to the record as showing Burris-Fish treated her on some twenty three occasions,

03    beginning in May 2007.  (*See* AR 482-505.)  (*See also* AR 595 (January 2010 report from

04    Burris-Fish indicating "monthly" visits with plaintiff).)  Plaintiff also argues that the ALJ's

05    focus on her ability to care for her children, her interaction with health care providers, and her

06    ability to make health care decisions are not specific and valid reasons for rejecting a treating

07    ARNP's opinions, and amount to an improper substitution of the ALJ's judgment for that of a

08    trained professional.  *See*, *e.g.*, *Rohan v. Chater*, 98 F.3d 966, 870 (7th Cir. 1996) (". . .ALJs

09    must not succumb to the temptation to play doctor and make their own independent medical

10    findings.")  Plaintiff again more generally argues that the ALJ erred in adopting the opinions

11    of a nonexamining physician who did not have the benefit of over 200 pages of treatment notes

12    generated after 2007, and rejecting the consistent opinions of ARNP Fish, therapist Schiller,

13    and nonexamining physician Dr. Clifford without providing sufficient reasoning.

14    As argued by plaintiff, and contrary to the Commissioner's contention, the record does

15    not reasonably support the ALJ's impression that Burris-Fish never examined plaintiff.  While

16    portions of the records documenting the sessions between Burris-Fish and plaintiff reflect

17    consideration of plaintiff's subjective reports, other portions reveal the observations of

18    Burris-Fish.  (*See*, *e.g*, AR 482 (including "MSE", or mental status examination, and

19    observations as to, *inter alia*, sensorium, appearance, psychomotor, speech, mood, and

20    perceptions).)

21    Arguably, the ALJ's error regarding the absence of an examination could be deemed

22    harmless.  *See Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)

01 (recognizing application of harmless error in Social Security context where a "mistake was

02 nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.")

03 Burris-Fish, as an ARNP, is not an acceptable medical source and her opinions may be rejected

04 by the provision of a germane reason.   Here, the ALJ pointed to a number of different factors,

05 including evidence of plaintiff's activities, as showing that the opinions of Burris-Fish were not

06 supported by the longitudinal record, and observed that Burris-Fish did not have the benefit of

07 the entire record.   (AR 15.)   The ALJ also directly addressed the various limitations assessed

08 by Burris-Fish and appropriately contrasted those limitations with contradictory evidence of

09 plaintiff's activities and abilities.   (AR 19.)   Additionally, the ALJ observed that, consistent

10 with at least part of Burris-Fish's assessment, he found plaintiff limited to the performance of

11 two to three step tasks.   (AR 19 and 601.)   The ALJ, therefore, provided several germane

12 reasons for not finding the bulk of the opinions of Burris-Fish supported in the record.

13 However, the Court finds plaintiff's final contention as to the bulk of the evidence

14 regarding her mental conditions persuasive.   In contrast to the ALJ's reliance on the opinions

15 of two reviewing physicians and the confusing opinion from Dr. Lavy, the record contains

16 supportive evidence from a treating ARNP and treating therapist, as well as supportive

17 evidence from Dr. Clifford, a physician reviewing the agency from the State's perspective.[4]

18 Considered as a whole, the Court concludes that the ALJ fails to set forth substantial evidence

19 support for his consideration of the medical evidence related to plaintiff's mental impairments.

20 ───────────────

   4 The record also contains a December 2004 DSHS evaluation from Donna M. Smith, Psy.D.,
   assessing marked and moderate limitations.   (AR 256-65.)   However, the ALJ did not find the opinion

21 an accurate representation of plaintiff's mental capacity from a longitudinal perspective because it was
   rendered shortly after plaintiff's psychiatric hospitalizations, at the beginning of the relevant time

22 period, and subsequent treatment notes indicated plaintiff "achieved relative stability regarding her
   mental health following the time of this evaluation."   (AR 19.)

01  On remand, the ALJ should reassess plaintiff's mental impairments, taking into consideration

02  all of the issues raised and discussed above.

03  <u>Credibility</u>

04      Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

05  reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

06  *See also Thomas*, 278 F.3d at 958-59. In finding a social security claimant's testimony

07  unreliable, an ALJ must render a credibility determination with sufficiently specific findings,

08  supported by substantial evidence. "General findings are insufficient; rather, the ALJ must

09  identify what testimony is not credible and what evidence undermines the claimant's

10  complaints." *Lester*, 81 F.3d at 834. "We require the ALJ to build an accurate and logical

11  bridge from the evidence to her conclusions so that we may afford the claimant meaningful

12  review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

13  "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

14  inconsistencies either in his testimony or between his testimony and his conduct, his daily

15  activities, his work record, and testimony from physicians and third parties concerning the

16  nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec.*

17  *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

18      The ALJ in this case found plaintiff's impairments could be expected to cause the

19  alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and

20  limiting effects of those symptoms are not credible to the extent inconsistent with the RFC

21  assessed. The ALJ explained this conclusion as follows:

22      The extent of the claimant's allegations are not supported in the record. In fact,

the claimant's reports regarding the start of her pain vary from provider to provider, ranging from pain began in mid 2005, in 2001, and on and off since age 14. For example, neurological examinations produced minimal objective signs of dysfunction. James R. McDowell, M.D., one of the claimant's treating physicians, opined in November 2006 that the claimant was "relatively intact" with regard to objective assessment. In particular, the claimant alleged left hand weakness and was using a cane, yet, Dr. McDowell could find no weakness, did not witness any clumsiness, and noted claimant performed fine finger movements okay. He did note decreased pinprick sensation in the dorsal radial forearm; however, he recommended no intervention. Also, despite a syrinx diagnosis, there was not recommended treatment. The claimant is not a surgical candidate and the most recent record indicates that trigger point injections were giving the claimant three to four weeks of relief. With regard to mental health complaints, the claimant does suffer from a significant psychological disorder, as evidenced by her psychiatric hospitalizations early in the record; however, all evidence since her last hospitalization, in October 2004, indicate that the claimant has been relatively stable with medication. In fact, in April 2007, the clamant denied experiencing depression and did not appear to be in a manic episode.

Also, the claimant's testimony regarding her activities and dysfunction is in significant contrast to the activities reported to various clinicians, as detailed fully above. For example, she testified that she was unable to even make her children a meal, leaving them to fend for themselves; yet, the record indicates that her husband was gone for long periods, leaving the claimant as the sole caretaker for her children, one of whom suffered from mental health issues. The claimant also took a family trip to Florida in early 2005. In August 2006, she was exercising daily, using yoga and pilates. While the claimant testified that she needed to use a cane, there is no evidence of a gait imbalance or corroboration of her alleged falls.

Given all of this, I do not find the claimant's allegations of pain and the extent of her alleged dysfunction fully credible.

(AR 16-17, internal citations to record omitted.)

Plaintiff denies inconsistency in her reporting, arguing the ALJ failed to recognize her multiple impairments, causing pain in various parts of her body and not arising at the same time. (*See* Dkt. 15 at 13 (describing evidence supporting existence of various impairments).) She reiterates her arguments regarding Dr. McDowell and adds that a claimant's subjective

01  testimony of disabling pain cannot be discredited "merely because [it is] unsupported by

02  objective evidence." *Lester*, 81 F.3d at 834.

03  Plaintiff also takes issue with the ALJ's assertion as to her relative stability with

04  medication since her hospitalizations and an instance in which she denied depression and did

05  not appear manic, again asserting the ALJ's failure to consider the unique characteristics of

06  bipolar disorder and its waxing and waning symptoms. *See Bauer*, 532 F.3d at 608-09 (finding

07  reasons offered for discounting evidence "suggest a lack of acquaintance with bipolar

08  disorder[]"; for example, while ALJ relied on plaintiff's basic abilities to care for self, son, and

09  household, the court noted plaintiff was "heavily medicated," and other evidence showed her

10  son performed most household shores, that treating doctors concluded plaintiff could not hold a

11  full-time job, and that, despite "hopeful remarks[]" in treatment notes, "[a] person who has a

12  chronic disease, whether physical or psychiatric, and is under continuous treatment for it with

13  heavy drugs, is likely to have better days and worse days[.]";  also stating: "Suppose that half

14  the time she is well enough that she could work, and half the time she is not. Then she could not

15  hold down a full-time job. That is likely to be the situation of a person who has bipolar disorder

16  that responds erratically to treatment.") (internal citations omitted).  She points to recognition

17  by the Social Security Agency that, for individuals with chronic mental impairments, overt

18  symptoms and signs may be minimized in "[h]ighly structured and supportive settings" such as

19  home, that the individual's ability to function outside of such settings may not have changed,

20  and that, if the individual's "symptomatology is controlled or attenuated by psychosocial

21  factors," the agency must consider the ability to function outside such settings.  20 C.F.R. pt.

22  404, Subpt. P, Appx. 1, § 12.00(E)-(F).  Plaintiff further observes the Ninth Circuit's

recognition that "[o]ccasional symptom-free periods - and even the sporadic ability to work - are not inconsistent with disability." *Lester*, 81 F.3d at 833.

Plaintiff states that the ALJ ignored her testimony that her parents help with her children when her husband is away for work and that her children are in school during the day. (AR 38, 42.) She contends the reliance on her child care activities is contrary to law. *See Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) (evidence showed household and child care chores performed "with difficulty, and with the aid of [the claimant's] sister, a neighbor, and another woman."; "The administrative law judge's casual equating of household work to work in the labor market cannot stand. Gentle *must* take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts.") *Cf. Rollins*, 261 F.3d at 857 (plaintiff in that case stated she "attended to 'all of [her] children's needs; meals, bathing, emotional, discipline, etc.' because her husband worked six days a week, usually from early in the morning until 10 p.m."; plaintiff also stated she "she left the house 'daily' to go to places such as her son's school, taekwondo lessons and soccer games, doctor's appointments, and the grocery store.") Plaintiff also notes her testimony that her vacations entail renting and mostly just hanging out at a trailer with her parents, and that "[i]t's a big challenge[]" due to her pain. (AR 43.) She cites case law acknowledging, for example, that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). *See also Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999) (road trip to California not sufficient to counter physicians' opinions that claimant needed to shift positions every thirty minutes or so, where there was an absence of information as to his positioning in the car and the frequency and duration of rest stops).

01      Plaintiff also takes issue with the ALJ's statement regarding her cane. She notes that,

02    when she complained of an unsteady gait in June 2007, Dr. Shin observed a "mildly wide

03    based[]" gait and prescribed a four legged cane (AR 352-33), and that, in June 2008, treating

04    physician Dr. Steven Litsky prescribed a "Canadian crutch." (AR 470.)

05      The Commissioner observes that, while plaintiff's parents might help at times, plaintiff,

06    her mother, and plaintiff's husband acknowledged plaintiff cared for her children. (AR 38, 42,

07    149-50, 211, 235, 331.) He notes the ALJ's additional recognition of plaintiff's other

08    activities, such as hosting a birthday party, attendance at soccer games, a vacation, attending

09    church, and traveling to Centralia to visit friends. (AR 15.)

10      The Commissioner also points to evidence in the record showing the effectiveness of

11    plaintiff's medication and the stability of her condition. (*See*, *e.g.*, AR 452 (plaintiff reported

12    her bipolar disorder was well controlled in August 2006), AR 522 (plaintiff reported she "has

13    been fairly stable and free of hospitalization for about 5 yrs" in May 2009).) The

14    Commissioner maintains that, while her symptoms may have varied over time, the repeated

15    instances where plaintiff, her care providers, and even Dr. Lavy stated her psychological

16    conditions were under control were substantial evidence supporting the ALJ's determination

17    that her impairments, while severe, were not disabling.

18      The ALJ's second reason for the credibility assessment is appropriate. That is,

19    "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully

20    corroborated by objective medical evidence, the medical evidence is still a relevant factor in

21    determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at

22    857; SSR 96-7p. The ALJ in this case properly considered, as one reason, the lack of objective

medical support for plaintiff's allegations. Also, while two physicians may have prescribed plaintiff's use of a cane, Dr. McDowell's observation remained relevant and appropriate to consider as an inconsistency between plaintiff's allegation and medical evidence of record. *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Additionally, as stated above, the ALJ reasonably relied on evidence of medical relief in relation to plaintiff's fibromyalgia.

Moreover, as a general matter, the Court finds that the ALJ appropriately considered the variety of plaintiff's activities as inconsistent with her reported level of impairment. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Thomas*, 278 F.3d at 958-59. The evidence surrounding plaintiff's child care activities and the extent of help she receives from others is unclear. (*See*, *e.g.*, AR 42-43 (plaintiff testified her husband did all of the grocery shopping and cooking, and that her boys make peanut butter and jelly or cereal when he is not home for dinner); AR 150 (plaintiff's husband indicates she cares for the children until he gets home from work); AR 211 (plaintiff's mother lives twenty seven miles away and, by her description, her assistance with the children includes attending medical appointments, volunteering at school, and visiting); AR 235 (plaintiff had separated from husband in 2004 and was acting as single parent to children).) However, considered as one amongst several activities, the ALJ's consideration of plaintiff's ability to care for her two children does not constitute reversible error. *Cf. Gentle*, 430 F.3d at 867-88 (plaintiff caring for an infant: "A more important point is that taking care of an infant, although demanding, has a degree of flexibility that work in the workplace does not. You can park the infant in a playpen for much of

01  the day, and anyway it will sleep much of the day . . ., and so the caretaker will have numerous

02  breaks in which to rest."); *Rollins*, 261 F.3d at 857 (plaintiff cared for children while husband

03  worked long hours six days a week; other evidence of activities outside the home).   Likewise,

04  while her activities on vacation may have been limited, the ALJ's consideration of plaintiff's

05  vacation, as one activity amongst several, was reasonable.   However, the Court finds the

06  remaining reasons proffered by the ALJ for plaintiff's credibility assessment problematic.

07       The ALJ first observed that plaintiff's reports as to the onset of her pain varied by

08  provider, and pointed to several documents in the record.   In an August 2006 record, plaintiff

09  reported "a one-year history of diffuse musculoskeletal pain that has been associated with

10  significant fatigue[,]" as well as "several years" difficulty with sciatica and an MRI showing

11  degenerative disc disease.   (AR 377.)   In November 2007, plaintiff pointed to a September

12  2005 incident leading to pain, stiffness, and fatigue, a 1999 automobile accident, and asserted

13  her various problems have been getting worse over the prior couple of years.   (AR 420.)

14  Lastly, in a November 2007 questionnaire, plaintiff stated she had had lower back pain on and

15  off since age fourteen.   (AR 429.)   The records cited do not provide compelling support for

16  the ALJ's conclusion.   In fact, the first two documents appear largely consistent as to the onset

17  date, while the records read cumulatively support the existence of a long history of pain issues,

18  with an increasing degree of severity.

19       As noted by the Commissioner, the record does contain evidence supporting both

20  improvement and relative stability in plaintiff's condition.   *Cf. White v. Comm'r of Soc. Sec.*,

21  572 F.3d 272, 286-87 (6th Cir. 2009) (distinguishing *Bauer* as involving unequivocal treating

22  physician opinions that claimant could not hold a full-time job and an ALJ who ignored the

01 episodic nature of the claimant's disorders). However, as described above, the record also

02 supports a continuous waxing and waning of plaintiff's symptoms. In this respect, the Court

03 finds persuasive plaintiff's argument that the ALJ failed to fully consider the nature of her

04 mental disorder. Plaintiff testified, as noted by the ALJ, that her medication kept her psychotic

05 symptoms – such as hearing voices and seeing things – under control, and that such symptoms

06 occurred only once every couple of years. (AR 14, 39-40.) Plaintiff went on to testify as to

07 the continuation of her other symptoms, stating:

> My moods are a rollercoaster. At least that's how I feel, I will go from a
> depression that continues to get worse and worse and then my doctor will put me
> on a different antidepressant or increase my antidepressant, and I will slowly
> come to a more stable area, and things will go fairly well for a while. A while
> being a few weeks, maybe a month, maybe two. And then it's back to the
> severe depression again. And the thing is I never know when it's going to
> happen. I'll be going along feeling okay with my mood and then it just hits.

12 (AR 40.) When the ALJ asked whether she ever had extended periods of mood stability,

13 plaintiff explained that the summer months were usually the best time of year, but that the

14 anxiety was always there, and that her worst lapses of depression occurred maybe five or more

15 times a year, including a "very long period of depression" that fall and winter. (AR 40-41.)

16 This seems consistent with plaintiff's reporting to her treating care providers. (*See*, *e.g.*, AR

17 519-94 (Schiller records).)

18 Even excluding one or more of an ALJ's reasons, a credibility assessment can be found

19 to retain the support of substantial evidence. *See Carmickle*, 553 F.3d at 1162-63. In this

20 case, the Court finds the ALJ's credibility assessment, on balance, insufficient given the errors

21 described above. Moreover, because the Court finds remand necessary for reconsideration of

22 plaintiff's mental impairments and the lay testimony, the ALJ's credibility assessment could be

01 otherwise implicated and require further consideration on remand.

02 <u>Lay Testimony</u>

03    Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

04 to work is competent evidence. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

05 The ALJ can reject the testimony of lay witnesses only upon giving reasons germane to each

06 witness. *See Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996) (finding rejection of

07 testimony of family members because, *inter alia*, they were "'understandably advocates, and

08 biased'" amounted to "wholesale dismissal of the testimony of all the witnesses as a group and

09 therefore [did] not qualify as a reason germane to each individual who testified.") (citing

10 *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). "[W]here the ALJ's error lies in a failure

11 to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot

12 consider the error harmless unless it can confidently conclude that no reasonable ALJ, when

13 fully crediting the testimony, could have reached a different disability determination." *Stout*,

14 454 F.3d at 1056.

15    The ALJ in this case described written statements from plaintiff's husband, Jeff

16 Williams, and her mother, Boneta Campbell. (AR 13.) After assessing plaintiff's credibility,

17 the ALJ stated he did not find the testimony of Williams and Campbell persuasive "[f]or similar

18 reasons." (AR 17.) He thereafter stated that "[s]ubjective testimony must also be supported by

19 objective medical findings[,]" and that "[t]he absence of necessary medical evidence cannot be

20 cured by lay testimony." (AR 17, cited cases omitted).

21    Plaintiff avers that the ALJ's reasoning was not germane to each witness. She also

22 argues that the ALJ illogically pointed to the absence of objective evidence given her issues of

01 pain and fatigue, and avers that, in any event, inconsistency with the medical evidence is not a

02 valid reason to reject lay testimony.

03    As argued by the Commissioner, where similar testimony is offered, an ALJ may

04 appropriately rely on the same reasoning for rejecting the testimony of a claimant and lay

05 witnesses. *See Valentine v. Comm'r SSA*, 574 F.3d 685, 693-94 (9th Cir. 2009) (stating, where

06 the ALJ offered the same reasoning for rejecting lay testimony similar to the claimant's

07 testimony: "In light of our conclusion that the ALJ provided clear and convincing reasons for

08 rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was

09 similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her

10 testimony.")   Therefore, to the extent the ALJ's "similar reasons" included the inconsistent

11 evidence in the record and evidence of plaintiff's activities, the ALJ's assessment of the lay

12 testimony could have withstood scrutiny. *See*, *e.g.*, *Bayliss*, 427 F.3d at 1218 ("Inconsistency

13 with medical evidence is [a germane] reason [for discrediting lay testimony].") *See also*

14 *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (finding germane the ALJ's reasoning

15 that the statements of a lay witness were inconsistent with the claimant's presentation to

16 treating physicians and with the claimant's failure to participate in treatment); *Lewis v. Apfel*,

17 236 F.3d 502, 512 (9th Cir. 2001) (contradictory medical records supported ALJ's rejection of

18 lay testimony as to symptoms).

19    However, the ALJ did not indicate his reliance on the "same" reasoning in rejecting the

20 lay testimony; he indicated his reliance on "similar" reasons.   Moreover, the only reason

21 subsequently identified was the lack of objective medical support for the lay testimony.   Yet,

22 an ALJ should not discredit lay testimony "on the basis of its relevance or irrelevance to

medical conclusions[,]" or "as not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing 20 C.F.R. § 404.1513(d) (providing that lay witness testimony may be introduced "to show the severity of [the claimant's] impairment(s) and how it affects [his] ability to work") and *Dodrill*, 12 F.3d at 918-19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.")) As stated by the Ninth Circuit, "[t]he rejection of the testimony of [the claimant's] family members because [the claimant's] medical records did not corroborate her fatigue and pain violates SSR 88-13, . . ., which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by her medical records." *Id*. *See also Smolen*, 80 F.3d at 1288-89 (the court noted that the claimant's disability was based on fatigue and pain, that the medical records were "sparse" and did not "provide adequate documentation of those symptoms[,]" and that, pursuant to SSR 88-13, the ALJ was consequently required to consider the lay testimony as to those symptoms; ALJ erred in rejecting the lay testimony because "'medical records, including chart notes made at the time, are far more reliable and entitled to more weight than recent recollections made by family members and others, made with a view toward helping their sibling in pending litigation.'") In this case, the ALJ's reliance on the lack of objective support for the lay testimony is contradictory to Ninth Circuit law and requires reconsideration of the lay testimony on remand.

<u>RFC Assessment and Hypothetical to VE</u>

At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and assess her work-related abilities on a function-by-function basis, including a required narrative

discussion. *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p. RFC is the most a claimant can do considering her limitations or restrictions. *See* SSR 96-8p. The ALJ must consider the limiting effects of all of plaintiff's impairments, including those that are not severe, in determining her RFC. §§ 404.1545(e), 416.945(e); SSR 96-8p.

A hypothetical posed to a VE must include all of the claimant's functional limitations supported by the record. *Thomas*, 278 F.3d at 956 (citing *Flores v. Shalala*, 49 F.3d 562, 520-71 (9th Cir. 1995)). A VE's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

Plaintiff asserts the deficiency of the findings at step four because the ALJ improperly misconstrued and rejected the medical evidence. She also maintains an inconsistency between the absence of any limitations in concentration or pace, despite the conclusion that plaintiff had moderate limitations in those areas (AR 15, 16), and avers that a limitation to simple two to three step work does not properly address the assessed limitation. Plaintiff further alleges inconsistency in the determination of fibromyalgia as a severe impairment, without any discussion of chronic pain and fatigue and its impact on her ability to perform sustained work activities. *See Reddick*, 157 F.3d at 725-26 ("The ALJ's finding on residual functional capacity was not supported by substantial evidence as it failed to account for the effects of fatigue on Claimant's ability to function in the workplace.") Lastly, plaintiff alleges error based on the deficient hypothetical proffered to the VE.

The ALJ need not include in the RFC assessment properly discounted opinion evidence

or claimant testimony.  *See Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Here, given the absence of any error in the ALJ's assessment of the evidence as to plaintiff's

physical impairments, plaintiff fails to demonstrate any corresponding error at steps four or

five.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (rejecting

reiteration of medical evidence arguments at step five).  *Cf. Reddick*, 157 F.3d at 725-726

(finding error in failure to account for fatigue in RFC for individual with chronic fatigue

syndrome where ALJ relied on opinions of doctors who did not appear to consider claimant's

fatigue).  Also, the ALJ clarified that the assessment of a moderate limitation in concentration,

persistence, and pace, among other findings, was not an assessment of plaintiff's RFC, but,

rather, used to rate the severity of plaintiff's mental impairments at steps two and three of the

sequential evaluation process.   (AR 15.)

However, given the errors in the evaluation of plaintiff's mental impairments, her

credibility, and the lay testimony, the RFC assessment and step five decision could be

implicated.   The ALJ should, therefore, reconsider steps four and five of the sequential

evaluation as necessary on remand.

## CONCLUSION

For the reasons set forth above, this matter is REMANDED for further administrative

proceedings.

DATED this 3rd day of February, 2012.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE -32